# STATE OF MICHIGAN

# COURT OF APPEALS

In re GRANT/SELLERS, Minor.

UNPUBLISHED
July 25, 2017

No. 335552
Wayne Circuit Court
Family Division
LC No. 13-514864-NA

In re P. D. SELLERS, Minor.

Nos. 336160; 336161
Wayne Circuit Court
Family Division
LC No. 13-514864-NA

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal as of right the trial court's orders terminating their parental rights to the minor children, JG, PS, and PDS. The court terminated the parental rights of both respondents to all three children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), and also relied on MCL 712A.19b(3)(c)(*ii*) as an additional statutory basis for terminating respondent-father's parental rights. Because we conclude that there were no errors warranting relief, we affirm.

Respondents have two children between them, PS and PDS. Respondent-mother also has an older son from a prior relationship, JG. JG was born in 2011 with Down's Syndrome and a heart condition that required surgery in 2013. The events leading to this appeal began in 2013 when Child Protective Services (CPS) began investigating allegations of respondent-mother's substance abuse and physical and medical neglect. In June 2015, after a two-day hearing, the trial court denied a prior petition seeking permanent custody of the children. Respondents were then given additional time to work toward reunification. When petitioner concluded a year later that respondents' progress was insufficient, it again sought to terminate parental rights. After termination hearings in October and November 2016, the trial court entered orders terminating respondents' parental rights to the children.

For her first argument on appeal, respondent-mother does not directly challenge the trial court's findings regarding the statutory grounds for termination of her parental rights. Instead, she asserts that the trial court erred when it found that reasonable efforts were made to reunify

-1-

the family. Respondent-mother argues that the Department of Health and Human Services (DHHS) failed to make reasonable efforts to reunify the family because it failed to take into consideration her diagnoses of bipolar disorder and attention deficit hyperactivity disorder (ADHD). This Court reviews the trial court's findings of fact, including a finding that DHHS made reasonable efforts toward reunification, for clear error. See *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). After reviewing the lower court record, we conclude that respondent-mother has failed to demonstrate that the trial court clearly erred.

Before a court may contemplate termination of a parent's parental rights, the petitioner must generally make reasonable efforts to reunite the family. MCL 712A.19a(2). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). However, a respondent also has a responsibility to participate in services offered by petitioner. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Very recently, our Supreme Court, in *In re Hicks/Brown Minors*, __ Mich __; __ NW2d __ (2017) (Docket No. 153786), considered whether the DHHS made reasonable efforts to reunify an intellectually disabled parent with her children.[1] The Court considered obligations that arise under both the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, and under the Michigan Probate Code, MCL 712A.18f(3)(d). Under the Probate Code, "the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Hicks/Brown*, __ Mich at __; slip op at 4. The Supreme Court also noted that the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (citation and quotation marks omitted.) The Court then held that the DHHS neglects its duty under the ADA to reasonably accommodate a disability when it fails to implement reasonable modifications to services or programs offered to a disabled parent. *Id.* at ___; slip op at 5. Similarly, the Court further stated that "efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id.* The Court noted, however, that DHHS cannot accommodate a disability of which it is unaware. *Id.* Applying the foregoing principles, we conclude that the record in this case does not establish that respondent-mother suffered from a disability for which she required accommodation, or for which she was not already being accommodated.

Respondent-mother contends that the DHHS failed to accommodate her bipolar disorder and ADHD. However, there is nothing in the record to support a finding that DHHS was aware

---

[1] The Supreme Court indicated that there were two questions presented: "whether Brown timely raised her claim for accommodation before the circuit court, and if so, whether the Department's efforts at family reunification were reasonable." *Hicks/Brown*, __ Mich at __; slip op at 1. However, it later found that it had "no occasion to decide whether the objection in this case was timely because neither the Department nor the children's lawyer-guardian ad litem raised a timeliness concern in the circuit court." *Id.* at ___; slip op at 7.

that respondent-mother suffered or suffers from a disability that required or requires accommodation. When the children first came into care, the court ordered respondent–mother to participate in, among other things, individual counseling. Over petitioner's objections, the court did not order that the parents undergo a psychological evaluation. The court reasoned that if one was necessary, this would be discerned and recommended during the individual counseling that had been ordered. Further, respondent-mother testified at the March 2014 dispositional review hearing that she was treating with a psychiatrist, but had not been prescribed medication. Respondent-mother has cited nothing in the record to support a finding that it was recommended in these early stages that she undergo additional evaluation or that a disability be accommodated.

The only evidence on which respondent-mother relies in support of her contention that she suffered from a disability that required accommodation is the June 23, 2015 report from the Clinic for Child Study. This report was generated in the middle of the first termination hearing that *did not* result in the termination of parental rights. Indeed, after this termination hearing, the court declined to terminate parental rights and, instead, granted respondents additional time to work toward reunification. On June 8, 2015, respondents and the children were evaluated by psychologist Robert Geiger, M.A., LLP. During the evaluation, both respondents disclosed that in their teen years they were diagnosed as bi-polar and suffering from ADHD. Respondent-mother reported taking medication for two years after she was diagnosed at the age of 14. In response to respondent-mother's reporting of racing thoughts and difficulty sleeping, Geiger noted that this supported her reports of suffering from bipolar disorder. Geiger also noted that both respondents were oriented to person, place, and time, that their attitudes were appropriate, and that their speech was coherent. Geiger found that their thought processes were logical, for the most part, and that their moods were within normal limits. Both respondents denied any hallucinations, and they did not appear delusional. Neither respondent endorsed symptoms of paranoia or severe anxiety.

Respondent-mother reported attending high school to the 12th grade while respondent-father only attended to the 11th grade. Geiger noted that both respondents had "adequate intellectual functioning." Geiger further found that their intellectual capacity appeared commensurate with their educational achievements. For both respondents, Geiger included bipolar disorder and ADHD in his constellation of diagnoses. Geiger, however, did not opine that respondent-mother was unable to comply with her treatment plan because of a disability or that specialized services would have enhanced the chances of compliance with the treatment plan. Indeed, Geiger concluded that respondents should have been able to comply with the treatment plan. He noted that "there has been woefully little compliance despite their sufficient intellectual capacity. They should have been able to, for example, attend 12-step self-help recovery groups such as AA/NA, the least demanding of treatment programs, particularly possible while neither of them are enjoying consistent employment." At best, Geiger recommended that additional mental health treatment would assist the parents in processing the grief upon the termination of their parental rights. Geiger noted:

> [Respondents] should be given one last referral so that they might participate in grief and loss counseling to address their reported sadness and gain closure. They should avail themselves of consistent therapy as well as relevant psychotropic medications, and should seek to improve their life circumstances through treatment for substance abuse issues that have almost certainly exacerbated personal conflict.

-3-

After Geiger's evaluation and the court's subsequent denial of the petition, respondent-mother was given an additional 16 months to work toward reunification. During this time, there was no request by respondent-mother that any perceived disability be accommodated. Respondent-mother never suggested that a disability prevented her from understanding the proceedings or what was expected of her. Indeed, respondent-mother's counsel brought this issue up for the first time over a year later, at the beginning of the October 20, 2016 termination hearing. At that time, respondent-mother's counsel argued that as a result of the June 26, 2015 diagnosis of ADHD and bipolar disorder, respondent-mother was entitled to specialized services that would warrant a three-month adjournment of the hearing. The trial court denied the adjournment after concluding that respondents did not suffer from cognitive impairments requiring specialized services.

We conclude that the trial court did not clearly err. Neither in the trial court nor on appeal has respondent-mother demonstrated that she suffered from a disability that required specialized accommodation. Moreover, respondent-mother was provided additional opportunities in an effort to assist her in overcoming the barriers to reunification. First, after the trial court denied the first petition to terminate parental rights, respondent-mother was granted an additional 16 months to work toward reunification. During this time, respondent-mother was given special consideration and treatment. The times and locations for parenting time and drug screens were changed to enhance her chances of compliance with the treatment plan. In an effort to improve compliance with required drug screening, the court reduced the number of screens to once a month. To further assist the parents, these screens were essentially non-random, as the court permitted the foster care worker to simply swab respondents during scheduled meetings. For a significant period of time, respondent-mother's counseling was in-home. The foster care worker also made appointments to have simple telephone conversations with respondent-mother during which they could discuss ways to improve her compliance. Respondent-mother failed to take advantage of these opportunities. Based on the foregoing, respondent-mother has failed to demonstrate that DHHS failed to accommodate a known disability. Accordingly, the trial court did not err when it found that DHHS's efforts toward family reunification were reasonable.

For his first argument on appeal, respondent-father argues that the trial court clearly erred when it concluded that there existed clear and convincing evidence to terminate his parental rights. And then both respondents contend that the trial court clearly erred in finding that termination of their parental rights was in the children's best interests. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent-father's parental rights to PDS were terminated pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). With respect to PS, the trial court relied on those same grounds and also cited MCL 712A.19b(3)(c)(*ii*) as an additional ground for termination. These statutory provisions permit termination of parental rights when the following conditions are satisfied:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err in terminating respondent-father's parental rights to PS under the foregoing grounds. It also did not err when it terminated respondent-father's parental rights to PDS pursuant to MCL 712A.19b(3)(g) and (j).[2] Because the facts that support the statutory grounds necessarily overlap, they will be discussed concurrently to avoid repetition.

---

[2] As indicated, the trial court terminated respondents' parental rights to PDS pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). MCL 712A.19b(3)(c)(*i*) was not a proper ground for termination because termination as to this child occurred at the initial dispositional hearing. See MCL 712A.19b(3)(c)(*i*) (requiring that 182 or more days have elapsed since the issuance of an initial dispositional order). The error, however, is harmless because it is only necessary to establish one ground for termination by clear and convincing evidence and the court properly concluded that

The evidence established that JG and PS had been in care for three years. During that time, the court denied the first petition to terminate parental rights and permitted respondent-father additional time to work toward reunification. PDS was born between the denial of the first petition and the second termination of parental rights hearing. After the denial of the first petition, respondent-father had nearly 16 months to participate in and benefit from a treatment plan and then demonstrate that he was in a position to properly parent his children. Respondent-father failed to consistently participate in the treatment plan. To the extent that he did participate, he failed to benefit from the services offered. See *Frey*, 297 Mich App at 248 (a respondent must demonstrate that he or she sufficiently benefited from proffered services). At the time of the termination hearing, the evidence established that respondent-father had not obtained or maintained suitable housing, nor had he presented verification of a legal source of income. He was not regularly attending parenting time, submitting to monthly drug screens, or communicating with petitioner. When respondent-father did attend parenting time, he did not demonstrate adequate parenting skills. He still required close supervision by the paternal grandmother to insure the children's safety. He brought inappropriate food to visits, and he was frequently distracted by his cell phone.

Based on the foregoing, the trial court did not clearly err in finding that there existed clear and convincing evidence to terminate respondent-father's parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The evidence supported a finding that despite a multitude of services over a three-year period, respondent-father had not adequately addressed the conditions that brought the children into care. As a result of this failure, respondent-father could not demonstrate that he was in a position to properly parent his children or that he would be able to do so within a reasonable time. Moreover, these unresolved issues posed a risk of harm to the children if they were to be returned to respondent-father's care.

Finally, with respect to respondents' arguments concerning the children's best interests, we place our focus on the children rather than the parents. *Moss*, 301 Mich App at 87. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

After considering the totality of the record, the trial court concluded that a preponderance of the evidence demonstrated that termination of respondents' parental rights was in the children's best interests. After reviewing the record, we are not left with a definite and firm conviction that a mistake was made on the matter.

At the time of the termination hearing, JG and PS had been in care for nearly three years; PDS had been in care for approximately six months, but was only nine months old at the time of removal. During this time, respondents were offered a multitude of services that they either

the other statutory grounds were established by clear and convincing evidence. *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013).

failed to participate in or failed to benefit from. In addition to failing to address their substance abuse issues, respondents could not obtain and maintain suitable housing, earn a legal source of income, or demonstrate appropriate parenting skills. Respondents were simply unable to properly parent their children and adequately provide for their needs.

By contrast, all three children were doing well in their placements. As indicated above, when balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. The foster parents caring for JG and PDS expressed an interest in adopting both children. Similarly, the paternal grandmother, who had cared for PS for most of these proceedings, also wished to adopt her granddaughter. These children were thriving in their foster homes. JG's special needs were being satisfied. He, the foster family, and even PDS, were learning how to use the sign language that JG, who is non-verbal, uses to communicate. Thus, it is clearly apparent that the children were placed in stable homes where they were progressing and that this progress could continue because the foster parents had all expressed a desire to adopt the children in their care.

Respondent-mother contends that the bond between her and the children weighed in favor of preserving her parental rights. However, respondent-mother's bond with her two older children was minimal. While she had a bond with PDS, who was permitted to live with her for the first nine months of her life, this bond does not outweigh the child's need for safety and security. Respondent-mother also argues that petitioner failed to consider placement with the maternal grandmother. This assertion, however, is unsupported by the record. The foster care worker specifically testified that when PDS came into care, the maternal grandmother's home was assessed and deemed inappropriate for placement.

The children are entitled to stability, consistency, and finality. Achieving these goals is particularly critical for JG considering his special needs. Accordingly, the trial court did not clearly err when it ruled that termination of respondents' parental rights was in the children's best interests. These children were at an age where they required stability, permanency, consistency, and finality in order to foster their continued growth and development, making termination necessary, as respondents cannot so provide the children.

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell